# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MYOSHI BIRDSONG, :

Plaintiff, :

vs. : CA 09-0539-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,

Defendant. :

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23.) Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the June 15, 2010 hearing before the Court, it is determined that the Commissioner's decision denying benefits is supported by substantial evidence and should be **AFFIRMED**.[1]

Plaintiff alleges disability from residual back pain, left shoulder problems, and pelvis pain sustained in an automobile accident some twenty years ago. (Tr. 86.) After reviewing the administrative record and holding a hearing, the Administrative Law Judge

---

[1] Any appeal taken from this memorandum opinion and order shall be made to the Eleventh Circuit Court of Appeals, as the parties have previously agreed. (Docs. 22 & 23.)

1

(ALJ) made the following relevant findings:

> **3. The claimant has the following severe impairment: status post motor vehicle accident (20 C.F.R. §§ 404.1521 *et seq.*).**
>
> The impairments [sic] listed above have [sic] been assessed to be severe medically[-]determinable impairments, causing significant limitations in the claimant's ability to perform basic work activities. To be evaluated under the five-step sequential evaluation process, claimant must be found to have a severe impairment. A severe impairment is an impairment which significantly limits [a] claimant's physical or mental ability to do basic work activities (20 C[.]F[.]R[.] 404.1520(c)).
>
> The claimant has alleged a number of impairments which the medical evidence of record fails to support [as] severe impairments. The claimant's treatment records reflect treatment for symptoms reasonably relatable to the impairments of carpal tunnel syndrome, restless leg syndrome, and abdominal pain. Although the record may support underlying medically[-]determinable impairments regarding these impairments, they fail to support these conditions limit [sic] the claimant's ability to perform work-related activities. The claimant's complaints regarding these conditions are accompanied by notations [sic] the claimant was not in acute distress and not functionally limited. In addition to failing to establish significant limitations to the claimant's ability to perform work activities due to these non-severe conditions, there is additionally no evidence that any significant limitations have or could be expected to last for 12 months. Radiology results of the claimant's abdomen were noted to suggest constipation, and the claimant was treated accordingly with laxatives. (Exhibit 7F) The claimant's abdominal swelling was treated as constipation, the claimant testified [that] she treated her restless leg syndrome with topical ointment, and there are even fewer indications that the claimant's carpal tunnel syndrome has required any treatment. (Exhibit 7F, 8F, 9F, 5F) The treatment sought and received for these conditions support [sic] these impairments are medically[-]determinable conditions, but fail to support [sic] these conditions cause any significant limitations to the ability to perform work-related activities. The claimant's conditions of carpal tunnel syndrome, restless leg syndrome, and abdominal pain are not found to be severe impairments.
>
> The record also contains a diagnosis contradicted by the medical evidence of record. The record contains a diagnosis of degenerative disc disease by the claimant's current treating physician. However, the objective evidence[,] including radiology results as read by an orthopedist[,] provides

objective evidence [sic] that is inconsistent with a diagnosis of degenerative disc disease. The claimant's orthopedic consultation made [sic] a diagnosis of muscle and ligament strain, as [sic] consistent with the x-ray evidence[,] which found the claimant's vertebra to be aligned and disk spaces to be well maintained. In addition to the unsubstantiated medical diagnosis found in the record from the claimant's treating physician, confirmation of this diagnosis cannot be made[,] as these treatment records were not signed by the attending physician whose name was specified, and no identification was made as to the diagnosing physician. (Exhibit 5F) The diagnosis of degenerative disc disease is not found to be supported by an underlying medically[-]determinable impairment and [is] inconsistent with the record.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C[.]F[.]R[.] Part 404, Subpart P, Appendix 1 (20 C[.]F[.]R[.] 404.1525 and 404.1526).**

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light exertion work as defined in 20 C[.]F[.]R[.] 404.1567(b) including being able to lift 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day and sit 6 hours in an 8-hour day, at no more than 2 hours at a time; and without restriction to pushing or pulling.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [sic] 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR [sic] 404.1527 and SSRs 96-2p, 96-5p, 96-6p[,] and 06-3p.

. . .

The claimant submitted a disability report alleging that due to back pain, shoulder problems, and pelvis pain[,] she was limited in her ability to work. The claimant notes [that] these conditions cause severe pain symptoms limiting her ability to lift above 25 pounds, as well as limit [sic] the ability to crawl, reach, and pull. The claimant alleged becoming disabled on June 1, 2007. (Exhibit 2E)

The claimant submitted a physical activities questionnaire alleging the

following. [sic] Pain impaired nightly sleep, and also impeded the claimant's posture while walking. Described as sharp and traveling up her back, the claimant's pain also limited the claimant's ability to sit. Unable to pick up anything heavy, the claimant noted [that] she was not supposed to pick up anything over 25 pounds. Claimant was unable to sit in a car for long periods due to back pain, and expressed severe limitations to standing, walking, and sitting. A cane and a walker were noted to have been in the past but not used currently. The claimant noted [that] her spouse and pet dogs depended on her for feeding and upkeep of the household. The claimant's personal care was not significantly limited[,] but activities were performed slower than they once were. Cooking and meal preparation was limited by postural and pain limitations, and her spouse was noted to assist in these activities. Household chores[,] such as mopping[,] were limited because constant bending was painful. Yard work was limited[,] as the claimant no longer mowed the lawn, and raking was now difficult as this activity hurt the claimant's back. Shopping was limited[,] as the claimant was unable to push a cart of groceries. The claimant did not indicate any limitations to loading or unloading groceries. Driving was limited due to an inability to sit straight up for long periods without pain, and [she] noted [that] her spouse would drive them when she experienced pain. The claimant estimated she was able to perform activities for half the day before she would need a break due to her condition. Activities ended when the claimant bent over[,] after which she could not stand up straight in order to continue her activities. Her treatment included a number of over[-]the[-]counter medications. (Exhibit 5E)

The claimant submitted a pain questionnaire dated June 12, 2007[,] alleging the following. [sic] Her pain began several years prior, and was located in the claimant's left shoulder, pelvis, and her back. Noted to have become progressively worse, the extent was noted to cause her to be unable to work. Lasting most of the day, the pain was treated by taking pain pills in order to sleep and sometimes caused [sic] the claimant to be bedridden. Pain was caused by picking up heavy things, pulling on things, and carrying heavy things. Sometimes lasting a couple days, the pain was worse when the claimant continued trying to work. In addition, when moving in a certain way, the pain was described as jumping up her back. Claimant treated the pain with over[-]the[-]counter medications taken over the last several years, which sometimes helped[,] but also made her drowsy. A back brace was used, topical analgesics, and hot towels were also used to relieve the pain. The pain first affected the claimant's activities on June 1, 2007[,] when the claimant was no longer able to perform her job effectively[,] but the pain began in 2000. Claimant noted having severe exertional and postural limitations as a result of her impairments. The

claimant's condition was noted to be a result of a car accident which caused a number of injuries to her shoulder, back, and pelvis, the symptoms of which have progressively worsened as she has aged. (Exhibit 3E)

The claimant testified at the hearing[,] alleging the following. [sic] Although she had applied for unemployment, she had been denied due to limitations in her ability to perform lifting. The claimant's alleged impairments were caused by injuries sustained in a car accident approximately 20 years ago. Suffering from multiple fractures to the pelvis and shoulder, the claimant experienced sharp pain in her back on a daily basis. Her pain was described as sharp[,] and caused her to tighten up, in addition to muscle spasms she experienced. Her back would become stiff and require her to stand. The claimant's impairments include her restless leg syndrome, which irritates and frustrates her and impairs her nightly sleep[,] estimated at 5-6 hours a night. The claimant treated this condition with her husband's back cream. Her carpal tunnel arose from working wrapping truck parts. Her hands were said to swell, tighten, and begin throbbing[,] which happened on about a weekly basis. The claimant was able to button and handle small items[,] subject to the condition of her wrists and hands. The claimant estimates [that] she is able to sit for 4 and stand for 5-6 hours, at 2 hour intervals. The claimant notes [that] she is able to pick up a gallon of milk weighing 8-10 pounds, but is unsure about a 20 pound bag of potatoes. Daily activities such as mopping and sweeping are limited by her inability to bend without pain. Her husband is noted to help with the household chores such as cooking and laundry, as well as any lifting or other activities the claimant is unable to perform. The claimant was able to clean, but without bending. She performed laundry, but was limited by her inability to bend. She went shopping, but was unable to push the grocery cart. She was able to drive a car, but was limited by the length of time spent sitting in that position. Medications such as her muscle relaxants would cause her to become sleepy. In addition[,] the claimant noted her medication of Motrin also caused problems. When she initially began narcotic painkillers, she also noted "being messed up". In addition to medication, the claimant notes having a brace, and having exercises she is to perform. However, she does not perform the exercises due [to] her pain. The claimant notes she has received [e]mergency [r]oom care twice, for her stomach problems as well as for problems with her medication. Although the condition of her stomach has not been identified, the claimant has been prescribed fiber to treat her symptom of constipation.

After careful consideration of the evidence, the undersigned finds that the claimant's medically[-]determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent [that] they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged status post motor vehicle accident, the objective evidence supports the [sic] claimant suffers from residual symptoms of these injuries[,] but fails to support the [sic] claimant has a disabling level of limitations. Radiology results of the claimant's lumbar spine as read by the claimant's orthopedist found the claimant's disc spaces were well[-]maintained and the claimant's vertebra well[-]aligned. X-rays of the claimant's pelvis revealed fractures noted to be well[-]healed. Straight leg raise testing noted no abnormal results. While the physician's impression included a muscle and ligament strain of the lumbosacral region, the treatment recommended was conservative. Noting [that] the claimant was not taking any medication at the time, he recommended treatment to be performed at home[,] including exercises and changes in sleeping positions. The course of treatment recommended is unsupportive of the claimant's symptoms as alleged. (Exhibit 6F) A consultative examination performed in June of 2007 found the claimant to have some limitations in the range of motion of her back, but found the range of motion of her upper and lower extremities to be satisfactory with good range of motion of both shoulders and knees. Strength in the claimant's major muscle groups was noted to be full, and no evidence of significant joint or back impairment was noted. (Exhibit 1F) There are sparse objective findings, and the claimant's underlying impairments as supported by the record are extremely remote in chronological origin. The evidence indicates [that] the claimant only takes pain medications intermittently, and does not support the claimant's [sic] condition has progressed to a disabling level. In accordance with 96-7p, the objective medical evidence fails to support claimant's symptoms and limitations as alleged. In order to adequately evaluate claimant's statements regarding symptoms and limitations, other evidence of record has been evaluated. Opinion evidence and other subjective factors were evaluated in order to fully assess the claimant's symptoms and limitations as supported by the record.

The record contains opinion evidence from a consultation to orthopedic surgeon B.F. Taylor, M.D., dated August 10, 2007. Although these records do not contain a pain assessment or physical capacities evaluation, they do contain Dr. Taylor's impressions of the chronic nature of the claimant's strain of the lumbosacral region of her back. In addition, her physician advised that due to her condition[,] she was expected to recover slowly and should not engage in stressful activities at that time. (Exhibit 6F) Dr. Taylor's notations indicate the claimant [sic] has a medically[-

]determinable impairment which could reasonably cause the symptoms of back pain, but made few indications supporting a disabling level of limitations. The assessment by Dr. Taylor does not express any limitations more severe than the limitations provided by the RFC defined above. The medical opinion evidence from Dr. Taylor was afforded greater weight by the undersigned as consistent with the full record.

Opinion evidence of the claimant's orthopedist is corroborated by the results of a consultative examination performed in June of 2007. Objective findings[,] such as the claimant's limited range of motion and functionality[,] as well as subjective complaints of pain are consistent with the findings of the claimant's treating orthopedist. The results of the consultative examination as well as impressions noted by Leon D. McLaughlin, Jr.[,] M.D. were found to be consistent with the record and afforded great weight [sic] by the undersigned, as well as supportive of the opinion evidence from the claimant's treating orthopedist. (Exhibit 1F)

A physical capacities evaluation and clinical pain assessment were submitted by the claimant's treating physician[,] Nikolas A. Janovski, M.D. The claimant was assessed to be capable of performing at well below the full range of sedentary [sic], due to significant levels of pain and functional limitations. Dr. Janovski deemed the claimant to be considered disabled and unfit for any type of gainful employment. Under 20 C[.]F[.]R[.] 404.1527(e) and 416.927(e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s)[,] but are administrative findings that are dispositive of a case; that is, that would direct the determination or decision of disability. The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner. Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. The undersigned has considered Dr. Janovski's medical opinion evidence, and has considered the underlying reasoning for his assessments on issues reserved to the Commissioner[,] including the determination of disability and the claimant's fitness for employment. Dr. Janovski's medical opinion is inconsistent with the medical evidence of record, and has been afforded little weight. Although a treating source, Dr. Janovski has a limited treatment history with the claimant. Dr. Janovski's conclusions regarding the claimant's limitations are also unsupported by objective bases. Dr. Janovski has attributed the claimant's disabling level of pain to her history of injuries sustained in a motor vehicle accident. However, the medical evidence of record fails to support such a severe degree of limitations[,] as the claimant's medical records are notably absent of objective findings

supporting Dr. Janovski's assessment. The medical opinion evidence of Dr. Janovski is also notably inconsistent with his own office records. While Dr. Janovski assessed the claimant to have marked concentration deficits, the claimant's treatment records include documentation reflecting the claimant [sic] did not allege any deficits to concentration or difficulty thinking [sic]. (Exhibit 3F, 4F, 2F) Additionally, Dr. Janovski's medical opinion evidence is internally inconsistent, providing contradictory assessments in the physical capabilities evaluation and the clinical pain assessment. Dr. Janovski noted the [sic] claimant should nor perform any pushing, pulling, or lifting of any sort in the clinical assessment of pain, but in the physical capacities evaluation noted no limitations to the claimant's ability to use her arms and hands for pushing and pulling of arm controls, as well as being able to lift 11-20 pounds occasionally. (Exhibit 3F, 4F) In addition to being inconsistent with his own records and own assessment, Dr. Janovski's assessment is inconsistent with the other credible medical evidence. While noting the [sic] claimant's pain has been at a disabling level since June 2007, this assessment is inconsistent with results of the consultative examination performed in June of 2007. Objective findings of the consultative examination found some limitations to the claimant's range of motion, but failed to support limitations in physical functioning which reflected a disabling level of pain symptoms. The examining physician also noted there [sic] was no evidence of significant joint or back impairment, strength in her major muscle groups was unimpaired, and the claimant was not found to be in acute distress during the examination. (Exhibit 1F) For the reasons stated, the medical opinion evidence of the claimant's treating physician[,] Dr. Janovski[,] was afforded little weight by the undersigned.

The Disability Determination Services (DDS) [sic] assessment of the claimant's condition was considered by the undersigned as opinion evidence from a non-medical source. Based on records of the consultative examination performed by Leon D. McLaughlin[,] Jr.[,] M.D. in June of 2007, the DDS found the claimant's impairment was non-severe. (Exhibit 2B) The claimant's problems of back, shoulder, and pelvic pain were determined to affect the claimant's ability to work in no more than a minimal degree. However, records available at the hearing level indicate the [sic] claimant has continued to experience residual symptoms and limitations. These limitations are inconsistent with a finding that the claimant's condition is non-severe. Therefore[,] the undersigned has afforded the State agency decision from DDS no weight.

The claimant has expressed her activities of daily living to be fairly limited due to her symptoms of pain as well as exertional and postural limitations. However, in view of the sparse medical evidence and inconsistent opinion

8

evidence, the claimant's activities of daily living do not reflect limitations which can be supported by the full record. The claimant's daily activities reflect a range of activities the claimant is limited in on an intermittent basis, and is not found to support a consistently disabling level of symptoms and limitations as alleged.

The claimant's longitudinal treatment history provides mixed indications regarding the severity of the claimant's condition. Persistent attempts by the claimant to obtain relief of a symptom may be a strong indication [that] those symptoms are the source of the claimant's distress. While the claimant has sought treatment with increased consistency more recently, there are several periods during the relevant period where the claimant did not consistently seek consistent medical care. In addition, the claimant's recent treatment includes narcotic painkillers to address her symptoms of pain. However, considering some of the diagnoses reflected in her current physician's treatment notes are contradicted or unsupported by the objective medical evidence, the nature of the claimant's present treatment is more reflective of subjective complaints by the claimant than increased severity of symptoms. The claimant's medical compliance has also provided mixed support for the claimant's impairments. While the claimant testified [that] she took her medications regularly, she also admitted [that] she did not perform the exercises advised for her treatment. The claimant's longitudinal treatment history is not found to provide significant indications regarding the claimant's condition and does not support nor [sic] deny the veracity of the claimant's statements.

In sum, the above residual functional capacity assessment is supported by the full record, including objective medical evidence including [sic] radiology results, treatment records, and physical examination results, [sic] opinion evidence supported by objective evidence and a lack of contradictory opinion evidence supported by the record, and subjective factors such as the claimant's activities of daily living.

**6. The claimant is capable of performing past relevant work as a short order cook. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C[.]F[.]R[.] 404.1565).** . . .

In comparing the claimant's [RFC] with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed. The claimant's past work as a short order cook is classified by the DOT as light and semiskilled. The claimant's RFC as defined above restricts the claimant to performing the full range of light work which is consistent with the

demands of the claimant's past work.

**7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2007[,] through the date of this decision (20 C[.]F[.]R[.] 404.1520(f)).**

(Tr. 11-18.) The Appeals Council denied Plaintiff's request for review, and so the hearing decision became the final decision of the Commissioner of Social Security. (Tr. 1.)

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Id*. at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education, and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). This Court's review of Social Security claims is a limited review, meaning, the Commissioner's findings and decision are conclusive if supported by substantial evidence. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Bridges v. Bowen*, 815 F.2d 622, 623 (11th Cir. 1987). When reviewing a claim resolved at the fourth step of the sequential evaluation, it must be remembered that although "the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record."

*Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for the Court is to determine whether the Commissioner's decision to deny the claimant benefits on the basis that she retains the residual functional capacity (RFC) to perform the full range of light work and can, therefore, perform her past relevant work as a short order cook is supported by substantial evidence. (Doc. 14, p. 2; Tr. 12-18.) Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the Eleventh Circuit has opined, when determining whether substantial evidence exists, "we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 2010 WL 1253068, *1 (11th Cir. April 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). Finally, "[e]ven if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

The sole issue on appeal that the Plaintiff has raised is whether the Residual Functional Capacities (RFC) assessment made by the ALJ at step four of the claims process is supported by substantial evidence. (Doc. 14, p. 3) Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

  1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.

  2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

  3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ relied upon test three above to determine that the claimant can perform her past relevant work as a short order cook when he explained:

> In comparing the claimant's [RFC] with the physical and mental demands of [claimant's past relevant work as a short order cook], the undersigned finds that the claimant is able to perform it as generally performed. The claimant's past work as a short order cook is classified by the DOT as light and semiskilled. The claimant's RFC as defined above restricts the claimant to performing the full range of light work[,] which is consistent with the demands of the claimant's past work.

(Tr. 17.) Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work. Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting

effects of the person's impairment(s) and the physical and mental demands of . . . her PRW to determine whether the individual can still do that work." *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the

claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id*.

In this case, Plaintiff contends, as previously stated, that the ALJ reached an RFC conclusion without the benefit of a Physical Capacities Evaluation (PCE). Specifically, Plaintiff claims that the record is "entirely devoid" of any evidence supporting the ALJ's RFC assessment. *Id*. In the process of determining that Plaintiff could return to her past relevant work as a short order cook, the ALJ found that Plaintiff retains the RFC to perform the full range of light work. In doing so he rejected an RFC and clinical pain assessment from Plaintiff's treating physician, Dr. Janovski. Dr. Janovski noted that Plaintiff could *not* work 8 hours per day, 40 hours a week without missing more than 2 days a month. (Tr. 143.) In the clinical assessment of pain ("CAP") form provided in the record, Dr. Janovski noted that Plaintiff's pain would distract her from adequately performing daily activities or work, that physical activity such as walking, standing, bending, stooping, and the movement of extremities would greatly increase Plaintiff's pain and cause her to be distracted from or to totally abandon tasks, *and that Plaintiff's pain would be totally unable to function at her previous work.* (Tr. 144-45.) Furthermore, Dr. Janovski noted in his CAP that Plaintiff could do "no pushing, no pulling, [and] no lifting of any sort" before noting that Plaintiff "is considered disabled and is unfit for any type of gainful employment." (Tr. 145.)

Where, as here, the ALJ has rejected the opinion of a treating physician, good cause must be shown therefore:

> In evaluating medical opinions, the ALJ considers many factors including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record, and a doctor's specialization. [20 C.F.R.] § 404.1527(d). Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless "good cause" is shown. *Id.* § 404.1527(d)(1), - (2), -(5); *Lewis* [*v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)]. "Good cause" exists to discredit a physician's testimony when it is contrary to or unsupported by the evidence of record, or it is inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Accordingly, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). When an ALJ articulates specific reasons for failing to accord controlling weight to the opinion of a treating or examining physician and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

*Davison*, 2010 WL 1253068 at *2; *see also Nichols v. Astrue*, 2010 WL 2042615 *5-6 (S.D. Ala. May 21, 2010) (same). Finally, "[w]hile statements from treating physicians regarding the level of work a claimant can perform are important, they are not determinative[,] because the ALJ has the ultimate responsibility to assess a claimant's residual functional capacity." *Carson v. Comm'r of Soc. Sec. Admin.*, 300 Fed.Appx. 741, 743 (11th Cir. 2008) (per curiam) (citations omitted).

Part of the Court's task, then, is to determine whether the ALJ made a sufficient demonstration of "good cause" when rejecting Dr. Janovski's medical opinions. Turning to the ALJ's decision, excerpted above, it is clear that the ALJ found good cause on this credibility issue. First, the ALJ has carefully explained the reasons for which he discredited Dr. Janovski's opinion: (1) the ALJ found it "inconsistent with the medical evidence of record," (2) Dr. Janovski "has a limited treatment history with the claimant," (3) Dr. Janovski's conclusions "are unsupported by objective bases," (4) Dr. Janovski's

medical opinion evidence "is also notably inconsistent with his own office records," and (5) Dr. Janovski's medical opinion evidence is "internally inconsistent," in that the doctor noted that Plaintiff should not perform any pushing, pulling or lifting of any sort in his clinical assessment of pain, but later in the physical capabilities evaluation noted no limitations to Claimant's ability to use her arms and hands for pushing and pulling of arm controls, as well as being able to lift up to 20 pounds occasionally. (Tr. 16.)

Having decided that the ALJ indeed articulated sufficiently specific reasons for rejecting the opinion of Claimant's treating physician, the undersigned now turns to the question of whether the specified reasons are backed by substantial evidence. The ALJ stated that although Dr. Janovski diagnosed Plaintiff with degenerative disc disease, the "objective evidence[,] including radiology results as read by an orthopedist . . . is inconsistent with a diagnosis of degenerative disc disease." (Tr. 12.) The ALJ then noted that orthopedist Dr. B.F. Taylor stated that "[x]-rays of the lumbar region reveals [that] the vertebra are well[-]aligned" and that "[t]he disc spaces are well[-]maintained." (Tr. 12; 150.) Dr. Taylor prescribed rather conservative treatment for Plaintiff's ailments, including exercising, using her knees more, and changing her sleeping position. (Tr. 150.) The ALJ also specifically mentioned that the findings of Dr. Taylor were corroborated by Plaintiff's consultative examination in June 2007 with Dr. McLaughlin, which found Plaintiff to have "some limitations in the range of motion of her back," but also found the range of motion of her extremities to be "satisfactory with good range of motion of both shoulders and knees." (Tr. 15; 133.) Dr. McLaughlin also noted that the strength in Plaintiff's "major muscle groups" was "full," and that there was "no evidence

16

of significant joint or back impairment." (*Id.*)

Going back to the findings of Dr. Janovski, the ALJ recognized that although he was a treating source, he "has a limited treatment history with the claimant." (Tr. 16.) The ALJ also explained that there exists no objective medical evidence in the record that supports Dr. Janovski's findings. (*Id.*) In this regard, it is noteworthy that Dr. Janovski performed no diagnostic tests or imaging studies on Plaintiff. The ALJ next observed that Dr. Janovski's medical opinion evidence was internally inconsistent, in that Dr. Janovski opined that Plaintiff had significant concentration deficits, but "the claimant's treatment records include documentation reflecting [that] the claimant did not allege any deficits to concentration or difficulty [in] thinking." (Tr. 16.) Finally, the ALJ was troubled by the inconsistency between Dr. Janovski's PCE and clinical assessment of pain ("CAP"), specifically that in the CAP, the doctor proscribed Plaintiff from performing any pushing, pulling, or lifting of any sort, but in the PCE noted no limitations on Plaintiff's ability to "use her arms and hands for pushing and pulling of arm controls, as well as being able to lift 11-20 pounds occasionally." (Tr. 16; 143-44.)

After reviewing the ALJ's written opinion, it is clear to the undersigned that his decision to discredit the testimony of Plaintiff's treating physician and finding an RFC differing from that suggested by Dr. Janovski was supported by substantial evidence.

The ALJ also discredited a portion of the testimony presented by the Plaintiff:

After careful consideration of the evidence, the undersigned finds that the claimant's medically[-]determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent [that] they are inconsistent with the

17

above residual functional capacity assessment.

(Tr. 14) In so finding, the ALJ again refers to the radiology results as read by Birdsong's orthopedist, x-rays of the pelvis showing that her old fractures were well-healed, normal straight leg raises, conservative treatment of her diagnosed muscle and ligament strain, and the report of a consultative examination in June, 2007. That report found Plaintiff to have some limitations in the range of motion of her back with satisfactory range of motion in her extremities and good range of motion in both shoulders and knees. It was also determined that she had full strength in her major muscle groups and no evidence of a significant joint or back impairment was found. Clearly, the ALJ was justified in discrediting the testimony of disabling pain and symptoms alleged by Birdsong.[2]

Without Dr. Janovski's opinions and Birdsong's testimony as to the severity of her impairments, she did not have evidence that would refute the ALJ's decision that she was capable of performing light work. The medical evidence remaining is that from her orthopedist, Dr. Taylor, and a consulting physician, Dr. McLaughlin, as recited above. This evidence provided substantial support for the ALJ's conclusion that Birdsong could perform light work. *See Green v. Social Security Administration*, 223 Fed.Appx. 915, 923-24 (11th Cir. 2007) ("Green argues that once the ALJ decided to discredit Dr. Bryant's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. Dr. Bryant's evaluation, however, was the only evidence that

---

[2] Plaintiff does not specifically attack this credibility decision in her Complaint or supporting brief.

Green produced, other than her own testimony, that refuted the conclusion that she could perform light work. Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.")

After deciding that the Plaintiff retained the RFC to engage in a full range of light work, the ALJ consulted the Dictionary of Occupational Titles and the evidence of record, including the information provided by Birdsong as to the exertional demands of her prior work, and came to the conclusion that her former prior relevant work as a short order cook did not require exertional demands greater than light work. The use of the DOT to determine the exertional requirements of a short order cook was not objected to by the Plaintiff and is clearly a reliable source for identifying the functional demands of jobs as they are performed in the national economy. SSR 82-61. Thus, the ultimate decision that Ms. Birdsong is capable of returning to her work as a short order cook is substantially supported by the evidence in this record.

## **CONCLUSION**

For the reasons set forth, and upon consideration of the administrative record, the hearing decision, and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner denying Plaintiff disability insurance benefits be

**AFFIRMED**.

**DONE AND ORDERED** this 12th day of August, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**
